NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1073
_____

JENN-CHING LUO,
                                        Appellant

v.


OWEN J. ROBERTS SCHOOL DISTRICT; GEOFFREY BALL;
SHARON W. MONTANYE; SWEET STEVENS KATZ WILLIAMS LLP;
THE PENNSYLVANIA DEPARTMENT OF EDUCATION
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:16-cv-06568)
District Judge:  Honorable Harvey Bartle, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 24, 2025

Before:  SHWARTZ, MONTGOMERY-REEVES, and SCIRICA, Circuit Judges

(Opinion filed: August 22, 2025)
_____

OPINION*
_____

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Appellant Jenn-Ching Luo appeals from orders of the District Court granting judgment on the administrative record in favor of defendant Owen J. Roberts School District and against Luo, and denying Luo's motion for reconsideration. For the following reasons, we will affirm the District Court's judgment.

The parties are quite familiar with the procedural history of this case, so we need not restate it in detail here. Briefly, Luo is the parent of B.L., a former special needs student in the School District. The Individuals with Disabilities in Education Act (IDEA) required the School District to provide B.L. with a free appropriate public education (FAPE), which included designing and implementing an Individualized Education Plan (IEP) for B.L. See 20 U.S.C. §§ 1412(a)(1), 1414(d)(2)(A). An IEP "is developed through a collaborative process between a child's parents, teachers, and school officials." A.J.T. v. Osseo Areas Sch., No. 24-249, 2025 WL 1657415, at *4 (U.S. June 12, 2025). Accordingly, on June 6, 2016, an IEP meeting was held to discuss B.L.'s independent educational evaluation (IEE), which was prepared by Dr. Michele Robins. Luo was at the meeting with other members of the IEP team, including Geoffrey Ball, a Special Education Supervisor for the School District, and an administrator from B.L.'s private school. Robins participated in the meeting by phone conference.

After the IEP meeting, the private school administrator prepared and circulated a summary of the meeting. The School District provided input and revisions, and Luo responded with his input, disagreeing in part with the School District. The administrator

2

and his staff prepared several drafts of the IEP, incorporating the parties' input. A final version of the IEP was sent to Luo and the School District. The School District then provided Luo with a NOREP, a form used to provide a parent with notice of any potential changes to a student's IEP. Luo returned the NOREP, indicating on the form that he did not consent to the changes and was requesting a due process hearing.

On June 22, 2016, Luo filed an administrative due process complaint under the IDEA, challenging the IEP meeting and the revised IEP. See 20 U.S.C. § 1415(b)(6). In particular, Luo claimed that his ability to participate in the meeting and the decision making process was impeded because (1) he was not given notice that Dr. Robins would participate by teleconference, and he did not agree to it, (2) Dr. Robins did not fully participate in the meeting, and she was not asked about her recommendations to which there was some objection; (3) Dr. Robins left the meeting before it concluded. Luo also claimed that the IEP was revised by Ball without his consent. He alleged that, due to the foregoing, the School District and Ball [ ] violated [his] procedural right and denied a FAPE." ECF No. 55-9.

After administrative hearings, Hearing Officer Jake McElligott issued a decision finding that Luo was not denied his right to meaningfully participate in the IEP meeting. See ECF No. 55-3 at 9, 13. McElligott nevertheless ordered changes to the IEP and directed the IEP team to reconvene to allow for an in-person meeting with Dr. Robins. Id. at 9-11, 13.

3

Luo filed an action in the District Court pursuant to the IDEA, challenging McElligott's decision. See 20 U.S.C. § 1415(i)(2) (providing a party aggrieved by a hearing officer's decision under the IDEA the right to bring a civil action in a district court).[1] The District Court found that the record evidence supported McElligott's determination that Luo was not denied meaningful participation in the meeting and, therefore, that he was not denied a FAPE. Accordingly, it granted judgment on the administrative record in favor of the School District and against Luo. Luo filed a motion for reconsideration, which was denied. He then timely appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. The District Court properly applied modified de novo review, giving "due weight" to McElligott's findings. S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003). We review the District Court's findings of fact for clear error, and its legal conclusions de novo. D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010). As the party aggrieved by McElligott's decision, Luo had the burden of persuasion before the District Court. See Ridley Sch. Dist. v. M.R., 680 F.3d 260, 270 (3d Cir. 2012).

Luo argues on appeal that the School District denied him a FAPE by permitting Dr. Robins to participate in the IEP meeting telephonically without his agreement. He notes, correctly, that the IDEA contemplates alternative means of participation, such as

---

[1] Luo's complaint also included numerous claims against various defendants stemming from the administrative hearing. In a prior appeal, we affirmed the dismissal of those claims, and remanded for proper consideration of the § 1415(i)(2) action. See Luo v. Owen J. Roberts Sch. Dist., No. 24-10130, 2024 WL 4199008 (3d Cir. Sept. 16. 2024).

4

by "conference calls," when the parent *and* the "local education agency" agree. 20 U.S.C. § 1414(f) (emphasis added). He also contends that Dr. Robins was not excused from "attending" the meeting in person. 20 U.S.C. § 1414(d)(1)(C)(ii). Luo argues that these alleged procedural violations amount to the denial of a FAPE, and because they occurred during the development of the IEP, the IEP denied a FAPE. We disagree.

Luo relies on Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206-07 (1982), which set forth a two-part inquiry for courts addressing § 1415(i)(2) suits: first, determine whether there is a procedural violation, and second, determine whether the IEP is substantively adequate. Luo argues that, due to the procedural violations, both the School District and the IEP "failed the first prong test," and thereby denied him a FAPE. Appellant's Br. at 20, 22. He is mistaken. While "[s]ubstantive inadequacy automatically entitles the parents to reimbursement," "procedural violations . . . only do so if they 'impeded the child's right to a [FAPE],' 'significantly impeded the parents' opportunity to participate in the decisionmaking process,' or 'caused a deprivation of educational benefits.' R.E. v. New York City Dep't of Educ., 694 F.3d 167, 190 (2d Cir. 2012) (citations omitted). Thus, as relevant here, even assuming that the School District ran afoul of IDEA's procedural requirements with regard to Dr. Robin's appearance at the IEP meeting, such "procedural violation[s] [are] actionable under the IDEA only if [they] . . . seriously deprive[d] [Luo] of [his] participation rights." Bayonne, 602 F.3d at 565.

5

The record supports McElligott's determination that Luo was not denied a meaningful opportunity to participate in the IEP meeting.[2]  Contrary to Luo's contention on appeal, the School District did not "block" Dr. Robins from attending the IEP meeting.  It worked to coordinate a date for her to attend.  When Dr. Robins indicated that she could not appear in person before the end of the school year (in either late May or June), the School District arranged for her to appear telephonically.  Notably, Luo did not object at the IEP meeting to Dr. Robins' participation.

McElligott found that Dr. Robins "was not overly expressive" at the meeting, and that her participation "was not deep or comprehensive."  ECF No. 55-3 at 4, 8.  However, Luo has not shown that her participation would have been different had she attended the meeting in person.[3]  Luo also claimed that the IEP team did not review Dr. Robins' IEE report with her.  But all team members had a copy of the report before the meeting, and

---

[2] The District Court concluded that "McElligo[t]t's decision adequately addressed any procedural failing" related to Dr. Robins' attendance because "[t]he order required the parties to reconvene in order to discuss Dr. Robins' findings in-person."  ECF No. 58.  We agree with Luo that the order would not address any perceived procedural violation at the IEP meeting.  Indeed, McElligott concluded that there was no procedural violation, and ordered the parties to reconvene only to address Luo's "concerns."  ECF No. 55-3 at 10, 13-14.  Moreover, the order indicated that, if Dr. Robins was "unable or unwilling to attend," the meeting need not be held.  Id. at 14.

[3] In support of this claim, Luo argues in his reply brief that Dr. Robins left "shortly after the start of the meeting."  Reply Br. at 16.  He forfeited this argument by failing to raise it in his opening brief.  See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016).  Moreover, the record does not support it.  McElligott found that Dr. Robins "could not participate for the entirety of the IEP meeting and dis-connected (sic) the call before the meeting's end," citing Ball's testimony that Dr. Robins left with "about five to 10 minutes remaining in the [75 minute] meeting."  ECF Nos. 55-3 at 4, 55-5 at 10.

Dr. Robins' findings were consistent with previous school evaluations. See ECF No. 55-5 at 9, 14. As McElligott found, the IEP Team discussed Dr. Robins' recommendations. Luo expressed his concerns about B.L., and explained why he believed Dr. Robins' recommendations should be adopted; and when the other team members objected to the recommendations, he expressed his disagreement. See, e.g., id. at 10-11, 20-21, 25. Luo also could have questioned Dr. Robins directly about the IEE report. The District Court therefore did not err in determining that the IEP meeting did not result in the denial of a FAPE. Accordingly, it properly granted judgment on the administrative proceedings in favor of the School District and against Luo.

Based on the foregoing, we will affirm the District Court's judgment.